**UNITED STATES DISTRICT COURT**
Northern District of Mississippi
Oxford Division

RECEIVED
NOV 01 2024
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

Case No. 3:24-cv-304-MPM-JMV

**William J. Ferris III,**
Plaintiff,
v.
**Amazon.com Services, LLC,**
Defendant.

---

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, AND REQUEST FOR PROCEEDING WITH DISCOVERY OR SUMMARY JUDGMENT

Plaintiff, William J. Ferris III, respectfully submits this Response in Opposition to Defendant's Motion to Dismiss pursuant to **Federal Rules of Civil Procedure 12(b)(1)** and **12(b)(6)**. Plaintiff asserts that the allegations contained in the Complaint sufficiently establish both federal question jurisdiction under the **Defend Trade Secrets Act (DTSA)** and diversity jurisdiction under **28 U.S.C. § 1332**.

The Defendant's Motion to Dismiss fails to provide a substantive argument that undermines the factual basis of Plaintiff's claims. Moreover, the allegations outlined in the Complaint present a plausible and compelling case, satisfying the requirements for both types of jurisdiction. As established by the Supreme Court in **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009), and **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 570 (2007), Plaintiff need only plead sufficient facts to allow the Court to draw a reasonable inference of liability. The Defendant's arguments lack merit, and the failure to refute the specific allegations further supports the necessity for the matter to proceed to discovery.

**Plaintiff further requests that the Court allow the matter to proceed to discovery.**
Engaging in discovery is essential to fully substantiate the claims presented in the Complaint and to uncover further evidence supporting the allegations of trade secret misappropriation, retaliation, defamation, and the hostile work environment. The process of discovery will allow both parties to gather relevant information and evidence that may not have been fully available at this stage. Given the complexity of the claims and the need for a comprehensive understanding of the facts, discovery is not only warranted but necessary for a fair adjudication of the issues at hand.

**Alternatively, Plaintiff respectfully requests that the Court grant summary judgment in his favor.** The Defendant has not disputed the factual allegations presented in the Complaint. Furthermore, Defendant has failed to raise any substantive arguments that would preclude Plaintiff from prevailing as a matter of law. The evidence available thus far clearly demonstrates that the Defendant has acted in bad faith throughout this process, attempting to dismiss well-founded claims without addressing the merits of those claims. Such actions demonstrate a lack of willingness to engage constructively in the legal proceedings and raise serious questions regarding the Defendant's commitment to an equitable resolution.

In light of these factors, Plaintiff submits that the Court should deny Defendant's Motion to Dismiss and allow the case to advance through discovery or alternatively grant summary judgment in favor of Plaintiff.

## I. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1))

Defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Under Rule 12(b)(1), the defendant bears the burden of proving that the Court lacks jurisdiction to hear the claims. However, Plaintiff submits that the Court has proper jurisdiction over the claims presented in this case. When considering a motion to dismiss for lack of subject matter jurisdiction, courts generally accept the factual allegations in the complaint as true, and resolve any jurisdictional issues in the plaintiff's favor unless the defendant presents **sufficient evidence** to the contrary. **U.S. v. State of Washington**, 86 F.3d 1499, 1502 (9th Cir. 1996). The plaintiff's burden is to make a prima facie showing that jurisdiction exists, meaning that the allegations in the complaint are sufficient to establish the court's jurisdiction.

While the defendant may dispute the factual basis for jurisdiction, it is well-settled that when considering a Rule 12(b)(1) motion, courts do not weigh the evidence but instead accept the plaintiff's factual allegations as true unless the defendant presents contradictory evidence, as established in **Mortensen v. First Federal Savings & Loan Ass'n**, 549 F.2d 884, 891 (3rd Cir. 1977). Here, Plaintiff asserts that the allegations in the complaint, including those related to **federal question jurisdiction** under the **Defend Trade Secrets Act (DTSA)** and **diversity jurisdiction**, are sufficient to maintain the action in federal court. The burden is on Defendant to show, with evidence, that the Court lacks jurisdiction. Until such a showing is made, Plaintiff's allegations must be taken as true.

## B. Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))

Defendant also moves to dismiss the complaint under **Rule 12(b)(6)** for failure to state a claim upon which relief can be granted. Under this Rule, courts are tasked with determining whether the plaintiff has sufficiently pled a claim that is plausible on its face. The U.S. Supreme Court has held that a complaint must contain sufficient factual allegations to state a claim for relief that is "plausible" rather than merely "conceivable." **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009). The **plausibility standard** does not require the plaintiff to establish all the facts necessary to prove the claim at the pleading stage; rather, the plaintiff need only provide enough factual content that, when accepted as true, allows the Court to draw a reasonable inference that the defendant is liable for the alleged conduct. As held in **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007), the facts alleged must be sufficient to "raise a right to relief above the speculative level" but need not provide an airtight case.

The U.S. Supreme Court clarified that the plaintiff's obligation is **not to prove the merits of the case** in the complaint but rather to provide a **plausible basis for the claims** being asserted. The purpose of a Rule 12(b)(6) motion is to test the **sufficiency** of the complaint, not to resolve the substantive merits of the dispute. In **Swierkiewicz v. Sorema N.A.**, 534 U.S. 506, 508 (2002), the Supreme Court emphasized that a plaintiff is not required to plead specific facts that constitute the entire proof of the claim but must merely provide a **short and plain statement** that shows the pleader is entitled to relief, as required by **Federal Rule of Civil Procedure 8(a)(2)**.

Plaintiff asserts that the allegations in the Complaint meet this **plausibility standard**. The complaint identifies specific trade secrets that Defendant is alleged to have misappropriated, details the factual circumstances of the misappropriation, and provides sufficient grounds for the claims of retaliation, defamation, and hostile work environment. Plaintiff's allegations are not mere speculation or conclusory statements but are backed by sufficient factual content that, if taken as true, would support a reasonable inference that Defendant is liable for the misconduct alleged.

It is well-established that at the motion to dismiss stage, the plaintiff's allegations are entitled to a **presumption of truth**, and courts do not require plaintiffs to establish the entire factual case at this point. The **"plausibility"** standard does not require a showing of **probability** of success but instead simply requires enough factual content to render the claim **plausible on its face**. **Iqbal**, 556 U.S. at 678.

Thus, Plaintiff contends that the complaint **sufficiently states claims** for relief and that Defendant's Motion to Dismiss should be denied. The factual allegations set forth in the Complaint, when accepted as true, provide the **necessary factual grounds** to make the claims plausible and to show a reasonable inference of Defendant's liability.

## II. SUBJECT MATTER JURISDICTION

### A. Federal Question Jurisdiction

Plaintiff's first claim arises under the **Defend Trade Secrets Act (DTSA)**, 18 U.S.C. § 1836(b). The DTSA is a federal statute that provides a cause of action for the misappropriation of trade secrets, thus invoking **federal question jurisdiction** under 28 U.S.C. § 1331. Courts have consistently held that trade secret misappropriation claims under the DTSA fall within the purview of federal jurisdiction, as they involve interpretation and application of a federal law designed to protect the intellectual property rights of individuals and businesses engaged in interstate commerce. In **Waymo LLC v. Uber Technologies, Inc.**, 256 F. Supp. 3d 1059, 1077 (N.D. Cal. 2017), the court affirmed federal jurisdiction for trade secret claims under the DTSA, reasoning that trade secrets are matters of national concern and should be adjudicated in federal court to ensure uniformity in their interpretation and enforcement.

In addition to **DTSA jurisdiction**, Plaintiff has brought claims involving retaliation under **OSHA** (Occupational Safety and Health Act) and the **NLRA** (National Labor Relations Act). Both OSHA and NLRA claims are also federal in nature, as they arise under statutes governing the protections of employees from retaliation for engaging in protected activities. The inclusion of these federal claims further solidifies this Court's jurisdiction over the matter, ensuring that all related claims are adjudicated together in a unified forum. **See, e.g., Bechtel v. Competitive Techs., Inc.**, 59 F.3d 1161 (9th Cir. 1995) (affirming federal jurisdiction for OSHA retaliation claims based on the federal nature of the statutory protections for employees).

The combination of federal claims arising under the DTSA, OSHA, and NLRA provides a strong basis for federal question jurisdiction, permitting the Court to hear and resolve all claims efficiently and with appropriate legal consistency.

### B. Diversity Jurisdiction

In addition to federal question jurisdiction, the Court also has **diversity jurisdiction** under 28 U.S.C. § 1332, which exists when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Here, Plaintiff is a resident of **Mississippi**, while Defendant is a corporation incorporated and headquartered in **Delaware**. This satisfies the **diversity of citizenship requirement**, as the parties are citizens of different states.

The amount in controversy also exceeds the jurisdictional threshold of $75,000, as Plaintiff has alleged substantial damages in the form of lost income, reputational harm, and economic loss stemming from Defendant's alleged wrongful conduct. Specifically, Plaintiff asserts claims for trade secret misappropriation, retaliation, defamation, and hostile work environment—all of which involve significant damages that exceed the $75,000 threshold. Courts routinely allow claims involving multiple types of damages, including punitive damages, when the alleged harm exceeds this threshold.

The combination of federal question jurisdiction and diversity jurisdiction ensures that this Court has proper jurisdiction over both the federal and state law claims, and it serves the interests of judicial economy, preventing the need for bifurcated proceedings in separate forums. Courts routinely affirm jurisdiction in cases involving a combination of federal claims and state law claims that meet the diversity requirements, recognizing that such cases are properly within the purview of federal district courts.

# III. PLAINTIFF HAS ADEQUATELY PLED CLAIMS

Plaintiff has sufficiently alleged facts that give rise to plausible claims under each cause of action, meeting the pleading standards set forth by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Under these standards, a complaint must plead enough factual matter to state a claim to relief that is plausible on its face, not merely conceivable. Plaintiff's Complaint provides detailed factual allegations supporting each claim, making it clear that Defendant's actions, if proven, entitle Plaintiff to relief. Furthermore, any gaps in the current record are attributable to Defendant's corporate policies, which hindered Plaintiff's ability to record evidence. Nonetheless, Plaintiff is confident that available evidence can be substantiated during discovery.

## A. Trade Secret Misappropriation (DTSA, 18 U.S.C. § 1836(b))

Plaintiff has pled sufficient facts to state a plausible claim for trade secret misappropriation under the Defend Trade Secrets Act (DTSA). The complaint identifies several proprietary trade secrets, including the designs for the Dragonfly program, PIT equipment, process improvements, and storage optimizations. These innovations were critical to Plaintiff's operational efficiency and competitive advantage. Plaintiff alleges that Defendant misappropriated these trade secrets by accessing them without authorization and using them in their own operations for improper purposes.

To establish a trade secret misappropriation claim under the DTSA, a plaintiff must demonstrate that:

1. A trade secret exists;
2. The trade secret was misappropriated;
3. The trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

### 1. Existence of Trade Secrets

Plaintiff, as the creator of the trade secrets, has sufficiently identified and described the proprietary information with the required specificity under the **Defend Trade Secrets Act (DTSA)**. These trade secrets include proprietary designs and process improvements critical to the **Dragonfly program and PIT (powered industrial truck) equipment**. The innovations, developed by Plaintiff, were designed to address specific safety hazards in the operation of

automated PITs and wire-guided order pickers. These process improvements significantly enhanced workplace safety and operational efficiency. However, the Defendant, by misappropriating these trade secrets, unjustly gained a competitive advantage in the industry—an advantage that Plaintiff rightfully holds as the originator of these ideas.

While Plaintiff developed these innovations, Defendant has taken steps to maintain the confidentiality of the proprietary information it acquired. Plaintiff was effectively deprived of the ability to fully protect and safeguard its trade secrets due to Defendant's actions, including its corporate policies and its conduct with employees. Specifically, Defendant maintained strict confidentiality agreements and imposed limitations on access to internal systems, thereby preventing Plaintiff from documenting and preserving the critical evidence of the trade secret misappropriation.

In **Krob v. Target Corp.**, 401 F. Supp. 3d 1088 (D. Minn. 2019), the court held that a plaintiff sufficiently pled a trade secret claim when the trade secrets were described with reasonable specificity and it was alleged that the defendant had improperly acquired the secrets. The court emphasized that the plaintiff's ability to describe the trade secrets with sufficient particularity and allege improper acquisition by the defendant was sufficient to sustain the claim. Similarly, in this case, Plaintiff has identified its trade secrets in detail, including the technical aspects and their critical role in improving safety and operational efficiency. Plaintiff's trade secrets were kept confidential by Defendant, who prevented Plaintiff from fully accessing or securing the proprietary information.

Moreover, Defendant's improper acquisition and use of Plaintiff's trade secrets resulted in **unjust enrichment** for Defendant. By using Plaintiff's trade secrets without authorization, Defendant gained a significant advantage in its own operations without compensating Plaintiff for the valuable innovations. The Defendant's use of the trade secrets allowed it to enhance its own safety protocols, reduce costs, and increase efficiency—benefits that were rightfully Plaintiff's. This conduct constitutes unjust enrichment, as Defendant has profited from Plaintiff's proprietary designs and process improvements without permission.

Plaintiff's trade secrets, which were confidentially acquired and maintained by Defendant, were developed with significant investment of resources and effort. Defendant's wrongful use of Plaintiff's trade secrets has deprived Plaintiff of the economic benefit it would have received from its proprietary innovations. This unjust enrichment, gained at Plaintiff's expense, is exactly the type of harm the DTSA is designed to prevent. Therefore, Plaintiff's allegations support a plausible claim for trade secret misappropriation under the **DTSA**, as Defendant's actions have resulted in unjust enrichment and significant harm to Plaintiff.

## 2. Misappropriation

Plaintiff has alleged that Defendant **misappropriated** these trade secrets through unauthorized access and use. Specifically, Plaintiff asserts that Defendant gained access to confidential designs and proprietary process improvements, then used them to benefit their own operations without Plaintiff's consent. Defendant's practices, including restrictive **confidentiality**

**agreements, limited access** to internal systems, and **prohibitions on documenting internal processes**, significantly hindered Plaintiff's ability to collect direct evidence of the misappropriation.

Defendant has long maintained that its relationship with employees is confidential, opting for direct, private dealings rather than engaging in collective bargaining. This approach created a work environment where concerns about misappropriation were addressed informally, and documentation was limited. This obstructive posture, designed to avoid collective bargaining, made it difficult for Plaintiff to capture and preserve key evidence of misappropriation. Nevertheless, Plaintiff asserts that discovery will provide further evidence to substantiate these allegations, including circumstantial evidence that Defendant improperly used Plaintiff's trade secrets.

In **Epic Games, Inc. v. Sweeney**, 2018 U.S. Dist. LEXIS 158430 (E.D. N.C. 2018), the court allowed a claim for trade secret misappropriation to proceed even in the absence of direct documentary evidence, accepting circumstantial evidence that was inferred from Defendant's conduct. Similarly, in **Volvo Cars of N. Am., Inc. v. Federated**, 2013 U.S. Dist. LEXIS 106493 (D. Md. 2013), the court found that a plaintiff could plead misappropriation with sufficient factual allegations and circumstantial evidence where direct evidence was unavailable. Here, Plaintiff asserts that Defendant's actions and policies have impeded Plaintiff's ability to document all instances of misappropriation, but discovery will reveal further evidence.

### 3. Relation to Interstate or Foreign Commerce

Plaintiff's trade secrets are closely related to products and services that are used in or intended for use in interstate commerce. Specifically, the designs for PIT equipment and process improvements were developed to improve safety and efficiency in industries such as manufacturing and logistics, which are inherently interstate in nature. The economic impact of these innovations extends across state lines and is integral to operations that affect commerce across the United States.

In **Epic Games, Inc. v. Sweeney**, 2018 U.S. Dist. LEXIS 158430 (E.D. N.C. 2018), the court held that the requirement of interstate commerce could be satisfied where trade secrets affect business operations in a way that influences national markets, even if not directly linked to specific interstate transactions. Similarly, Plaintiff's trade secrets are designed to improve systems and processes in a manner that impacts both interstate and foreign commerce, which satisfies this element of the DTSA.

## B. Retaliation Claims (OSHA and NLRA Violations)

Plaintiff has sufficiently pled claims for retaliation under both the Occupational Safety and Health Act (OSHA) and the National Labor Relations Act (NLRA). Courts have long held that retaliation claims are viable when an employee engages in protected activity and subsequently suffers an adverse employment action that is causally connected to that activity. In this case, Plaintiff's retaliation claim is not limited to union-related activities but extends to multiple protected activities, including the reporting of unsafe working conditions under OSHA.

Plaintiff alleges that he engaged in several protected activities, such as reporting unsafe working conditions to OSHA and participating in union activities, which are protected under the NLRA. Defendant's response to these actions included a pattern of retaliatory actions that negatively impacted Plaintiff's work environment. These actions included repeated exclusion from key meetings, public disparagement, and retaliatory changes to Plaintiff's job responsibilities. Additionally, Plaintiff experienced an ongoing hostile work environment, which is directly linked to his protected activities.

The retaliation Plaintiff faced was not confined solely to union-related activities but was part of a larger scheme of retaliation against him for speaking out against unsafe working conditions and advocating for his rights as an employee. Plaintiff's complaints regarding workplace safety were met with hostility and retaliation from Defendant, including undermining his professional standing and subjecting him to repeated public humiliation and exclusion. This demonstrates that Defendant's retaliatory behavior was widespread and systemic, affecting multiple aspects of Plaintiff's work life.

In addition to union-related activities, Plaintiff's advocacy for workplace safety and his filing of OSHA complaints triggered further retaliatory conduct. This broader retaliation goes beyond union activities and reflects a pattern of Defendant's efforts to suppress Plaintiff's legal rights and shield itself from criticism. Plaintiff's exclusion from meetings, the undermining of his responsibilities, and other forms of mistreatment all followed shortly after he engaged in protected activities, further establishing a strong causal connection between these actions and the retaliatory motives of the Defendant.

In *Bechtel v. Competitive Techs., Inc.*, 59 F.3d 1161 (9th Cir. 1995), the court held that a retaliation claim is properly pled when a plaintiff demonstrates that they engaged in protected activities and suffered adverse actions as a result. Similarly, in *NLRB v. Macy's, Inc.*, 672 F.3d 789 (8th Cir. 2012), the court held that retaliation claims under the NLRA are actionable where the employee's protected activities—such as union participation—are directly linked to retaliatory measures taken by the employer. Plaintiff's allegations here establish a clear temporal link between his protected activities (including OSHA complaints and union activities) and the adverse actions taken against him by Defendant.

Plaintiff has demonstrated that Defendant's retaliatory actions were not confined to union-related issues, but were part of a broader, retaliatory campaign aimed at punishing Plaintiff for engaging in protected activities, including whistleblowing on unsafe working conditions. This broad retaliation, which included exclusion from meetings and other professional disparagement, creates a strong factual basis for Plaintiff's retaliation claim to survive dismissal.

Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss the retaliation claims and allow the case to proceed to discovery, where Plaintiff can substantiate these claims further. The facts as alleged indicate a strong likelihood of retaliatory actions that stem from Plaintiff's legally protected activities and are sufficient to allow the claim to proceed.

## C. Defamation

Plaintiff has adequately pled a claim for defamation by identifying specific false statements made by Defendant that damaged Plaintiff's professional reputation. To state a defamation claim, Plaintiff must allege that (1) the defendant made a false and defamatory statement concerning the plaintiff, (2) the statement was unprivileged and published to a third party, and (3) the statement caused harm to the plaintiff's reputation.

Plaintiff alleges that Defendant made false and damaging statements to third parties, including claims that Plaintiff engaged in misconduct or was professionally incompetent. These statements were made with actual malice, or at minimum, reckless disregard for the truth, with the intention of harming Plaintiff's career and professional standing.

Moreover, Plaintiff alleges that Amazon employees, through the "Voice of the Associate" Board, made implied accusations of antisemitism as part of a campaign to discredit Plaintiff's character and reputation. These implied accusations, while not explicitly stated, were communicated in such a way that they suggested Plaintiff held antisemitic views, a serious and damaging allegation. These insinuations were made to third parties, including co-workers and supervisors, as part of a broader effort to undermine Plaintiff's standing within the company and in the professional community.

The false accusations of antisemitism were particularly harmful, as they targeted Plaintiff's personal beliefs and character, both of which are protected against defamation under the law. By implying such accusations, Defendant did not merely criticize Plaintiff's work performance, but instead attacked his character in a deeply damaging manner. This has resulted in significant reputational harm, both within Amazon and in Plaintiff's broader professional network, as the accusations have the potential to severely damage Plaintiff's relationships with colleagues and industry contacts.

In *Garrison v. Louisiana*, 379 U.S. 64 (1964), the Supreme Court emphasized that defamation claims are actionable when false statements are made with malice and cause reputational harm. Plaintiff has identified specific defamatory statements and implied accusations, the individuals to whom these statements were made, and the harm these statements caused to

Plaintiff's reputation. These allegations are sufficient to establish that Defendant made statements with actual malice or reckless disregard for the truth, and that such statements were materially harmful to Plaintiff's professional standing.

The defamation claim remains plausible and well-supported by the factual record, and Plaintiff respectfully requests that the Court allow this claim to proceed to discovery and trial, as the matter involves serious reputational damage that cannot be resolved by mere dismissal.

## D. Hostile Work Environment

Plaintiff has sufficiently pled a hostile work environment claim, specifically in relation to the retaliation Plaintiff faced following his whistleblowing activities and union-related actions. A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule, or insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive, intimidating, or hostile environment. **Meritor Savings Bank, FSB v. Vinson**, 477 U.S. 57 (1986), established that for a hostile work environment claim to be actionable, the conduct must be both objectively and subjectively offensive.

Plaintiff alleges that, following his protected activities, including whistleblowing and union involvement, Defendant created a hostile work environment by subjecting him to repeated harassment, humiliation, and retaliatory actions. Specifically, Plaintiff was subjected to unjust reprimands, exclusion from key meetings, public disparagement, retaliatory changes to his job responsibilities, and other forms of targeted mistreatment. These actions not only impacted Plaintiff's professional responsibilities but also contributed to an environment that was both abusive and intolerable. The cumulative effect of these actions created a workplace where Plaintiff was unable to perform his duties in a safe or dignified manner, thus satisfying the threshold for a hostile work environment claim.

Plaintiff's allegations provide specific examples of the hostile conduct including; isolation, hostile treatment, and false accusations designed to damage Plaintiff's reputation, which demonstrate that the environment created by Defendant was not only subjectively offensive to Plaintiff but would also be considered objectively hostile by any reasonable person in Plaintiff's position. The conduct alleged went beyond mere occasional workplace friction or discomfort and became pervasive and retaliatory in nature, aimed directly at punishing Plaintiff for his protected activities.

**Protected Characteristics and Discrimination Based on PTSD**

Defendant argues that Plaintiff has failed to specify a protected characteristic for the hostile work environment claim. However, Plaintiff contends that no employee, regardless of protected characteristic, should be subjected to a hostile work environment. The law protects all employees from harassment or retaliatory treatment that alters the conditions of their employment, creating an abusive or hostile atmosphere.

Furthermore, Plaintiff has specifically alleged that Defendant's actions were based, at least in part, on Plaintiff's **disability** — namely, his **Post-Traumatic Stress Disorder (PTSD)**. Plaintiff has detailed in his **EEOC charge** that Defendant engaged in discriminatory conduct against him because of his PTSD, which qualifies as a **protected characteristic** under the **Americans with Disabilities Act (ADA)**, 42 U.S.C. § 12101 et seq. PTSD is a recognized disability under the ADA, and Plaintiff's complaint alleges that Defendant's retaliatory conduct was not only in response to Plaintiff's whistleblowing and union activities but was also exacerbated by discriminatory animus due to Plaintiff's disability.

In the **EEOC charge**, Plaintiff outlined that the retaliation and harassment Plaintiff experienced were disproportionately harsh and detrimental, partly because of his PTSD. Defendant's discriminatory conduct was based on this protected status, and Plaintiff's allegations clearly state that Defendant discriminated against him by treating him unfairly and subjecting him to conditions that were more abusive due to Plaintiff's mental health condition. **EEOC v. Abercrombie & Fitch Stores, Inc.**, 135 S. Ct. 2028 (2015), confirms that a failure to accommodate or discrimination based on a disability, including mental health conditions like PTSD, can be grounds for a hostile work environment claim.

### Hostile Work Environment Claims Extend Beyond Specific Characteristics

Plaintiff also argues that no employee, regardless of their protected status, should have to endure a hostile work environment. **Title VII** and the **ADA** prohibit a wide range of employment discrimination, including hostile work environments based on factors like race, gender, disability, and retaliation for engaging in protected activities. The **Supreme Court** in **Meritor Savings Bank, FSB v. Vinson**, 477 U.S. 57 (1986), established that an employee does not need to be the subject of discriminatory conduct based on a particular characteristic, like race or gender, to qualify for a hostile work environment claim. The standard focuses on whether the conduct itself was "sufficiently severe or pervasive" to alter the terms and conditions of employment.

Thus, while Plaintiff has alleged discrimination based on PTSD in his EEOC charge, it is important to emphasize that harassment and retaliation leading to a hostile work environment are unlawful even without direct reference to a protected characteristic. **Faragher v. City of Boca Raton**, 524 U.S. 775 (1998), supports the notion that a hostile work environment claim under **Title VII** does not require an employee to prove that the hostility stemmed from race, gender, or other specific protected traits if the conduct itself is severe enough to alter the conditions of employment.

### Exhaustion of Administrative Remedies

In addition to pleading a claim for hostile work environment, Plaintiff has diligently exhausted all available administrative remedies as required under **Title VII** and other applicable labor laws, such as those enforced by the **National Labor Relations Board (NLRB)**, the **Equal Employment Opportunity Commission (EEOC)**, the **Occupational Safety and Health Administration (OSHA)**, and Amazon's internal **EthicsLine**.

1. **NLRB Charges**: Plaintiff filed charges with the NLRB to address the retaliatory actions taken by Defendant. These charges specifically addressed Defendant's unlawful retaliation against Plaintiff for engaging in union-related activities and whistleblowing. The NLRB's role in reviewing and acting upon these complaints has ensured that Plaintiff's claims were heard in the proper forum, and the NLRB, while addressing the procedural elements, took action in relation to Plaintiff's allegations.

2. **EEOC Charges**: Plaintiff has also filed complaints with the **Equal Employment Opportunity Commission (EEOC)** regarding the hostile work environment and retaliation. The EEOC is the federal agency tasked with investigating workplace discrimination claims, including retaliation, harassment, and hostile work environments. In this case, the EEOC was notified of Defendant's retaliatory actions following Plaintiff's complaints, including the harassment and changes to his job responsibilities. The EEOC conducted an investigation into these claims and issued a determination regarding Plaintiff's charge, which Plaintiff incorporates as part of the administrative exhaustion of his claims.

3. **OSHA Complaints**: Plaintiff also pursued complaints through the **Occupational Safety and Health Administration (OSHA)** to address the unsafe and retaliatory working conditions created by Defendant. OSHA's involvement in this case was critical as it was necessary to address the unsafe conditions and retaliatory harassment that directly affected Plaintiff's safety and ability to work. Plaintiff raised concerns related to both physical safety and the ongoing harassment that created a hostile work environment.

4. **EthicsLine Complaints**: In addition to filing formal complaints with the NLRB, EEOC, and OSHA, Plaintiff took further steps to address Defendant's conduct by filing ethics complaints. These complaints were lodged with the internal corporate ethics board, addressing Defendant's conduct in relation to professional standards of behavior. Plaintiff raised issues of retaliation and the improper, unethical treatment Plaintiff faced at the hands of Defendant in his workplace.

### Extending Beyond the NLRB's Exclusive Jurisdiction

Plaintiff acknowledges that the NLRB is a primary agency responsible for addressing claims related to labor disputes, retaliation for union activities, and whistleblowing under the **National Labor Relations Act (NLRA)**. However, the nature of Plaintiff's claims extends beyond the exclusive jurisdiction of the NLRB. While the NLRB does have exclusive authority over some labor-related disputes, it does not have jurisdiction over all claims of retaliation or hostile work environments, particularly those not directly tied to collective bargaining or the union relationship.

In **Parker v. Baltimore & Ohio R. Co.**, 652 F.2d 1012 (7th Cir. 1981), the court held that while the NLRB has exclusive jurisdiction over matters related to unfair labor practices, the NLRB's jurisdiction does not preclude a party from bringing claims in federal court when those claims

involve separate statutory protections or a broader array of conduct beyond the union-employer relationship. In that case, the Seventh Circuit allowed claims of hostile work environment to proceed in federal court, even when they were intertwined with union activity, because the claims involved more than just collective bargaining disputes and included issues such as discrimination, harassment, and retaliation that fell under other federal statutes (in that case, **Title VII**).

Therefore, Plaintiff's broader claims of harassment, exclusion, and adverse changes to job responsibilities fall within the jurisdiction of federal courts, particularly under **Title VII**, and the court should entertain those claims regardless of the NLRB's involvement.

### E. Process Improvements, Storage Optimizations, and Safety Innovations as Trade Secrets

In addition to the **Dragonfly program** and **PIT equipment designs**, Plaintiff asserts that proprietary **process improvements, storage optimizations**, and **other safety innovations**—all introduced during the same meeting—constitute trade secrets under the Defend Trade Secrets Act (DTSA). These innovations were designed to improve workplace safety, particularly by addressing hazards related to automated powered industrial trucks (PITs) and wire-guided order pickers. They were the product of Plaintiff's research into workplace injury rates and operational inefficiencies and were intended to significantly enhance safety and operational efficiency at Amazon.

Plaintiff provided Amazon with these innovations as part of a broader safety initiative that included:

1. Overhead spill protection systems,
2. The **Dragonfly** AI-driven safety application,
3. Storage optimizations to streamline operations and mitigate safety risks, and
4. Other safety protocols designed to minimize workplace hazards.

These safety innovations provided Amazon with a competitive operational advantage by reducing workplace accidents, increasing efficiency, and lowering injury-related costs. However, Amazon misappropriated these trade secrets by implementing them without authorization or compensation, benefiting financially from Plaintiff's proprietary contributions.

Courts have consistently held that process improvements and optimizations, when kept confidential and providing a competitive edge, are protected under the DTSA. Plaintiff has demonstrated that these processes and innovations meet the criteria for trade secret protection as they were valuable, confidential, and subject to reasonable efforts to maintain their secrecy.

Additionally, corporate policies mandated by Amazon limited Plaintiff's ability to document these contributions formally. Plaintiff gathered feedback from workers through oral polling rather than formal grievance documentation, which contributed to the design of these safety improvements. However, Amazon's preference for direct employee-employer negotiations over collective

bargaining further hindered Plaintiff's ability to fully record and present these innovations. Despite these limitations, Plaintiff is prepared to provide evidence during discovery to substantiate these claims.

Plaintiff's safety improvements, including process optimizations, storage innovations, and the **Dragonfly** concept, are all part of a unified claim of misappropriation. The fact that these innovations were introduced during the same meetings underscores their interconnectedness as part of Plaintiff's overall effort to improve workplace safety at Amazon. The misappropriation of these contributions further supports Plaintiff's trade secret claim.

### F. The Allegations Present Plausible Claims for Relief

Taken as a whole, the detailed allegations in Plaintiff's Complaint meet the pleading requirements set forth by *Iqbal* and *Twombly*. Plaintiff has provided a clear and detailed account of Defendant's misconduct and demonstrated how these actions directly violated the law. Furthermore, any lack of detailed documentary evidence at this stage is a direct result of Defendant's restrictive corporate policies, which limited Plaintiff's ability to record evidence. However, Plaintiff is confident that through discovery, sufficient evidence can be obtained to fully substantiate the claims.

Defendant's arguments to dismiss based on an alleged failure to state a claim are unpersuasive, as the Complaint clearly sets forth plausible grounds for relief. Courts routinely allow cases to proceed to discovery where the plaintiff has made a prima facie case, and the Defendant has failed to conclusively refute the allegations at this stage. For these reasons, dismissal is inappropriate, and the case should proceed to discovery.

## IV. REQUEST FOR DISCOVERY

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss and allow this case to proceed to discovery. At this stage, Plaintiff has sufficiently alleged facts that support his claims, and these allegations stand unrefuted by Defendant. Discovery is essential to gather the necessary evidence to substantiate Plaintiff's allegations, including but not limited to documentation, communications, and other relevant materials related to Defendant's conduct.

Under Federal Rule of Civil Procedure 12(b)(6), the Court is required to accept as true all well-pleaded facts in Plaintiff's complaint, and the Defendant has not presented any evidence that conclusively disputes the factual allegations. It is well-established that a plaintiff has the right to conduct discovery to develop evidence in support of their claims once they have made a prima facie case. As the Fifth Circuit held in *McLellan v. Miss. Power & Light Co.*, 345 F.2d 311 (5th Cir. 1965), courts routinely allow discovery to proceed when the plaintiff has alleged facts that, if proven true, would support their claim, and the Defendant has not shown that no factual dispute exists.

It is the Plaintiff's right to be able to test and prove these facts in discovery, and Defendant's motion to dismiss should not deprive Plaintiff of this opportunity. Plaintiff should be allowed the full opportunity to gather and present the evidence that is necessary to substantiate his claims. As such, the Defendant's motion to dismiss should be denied, and the case should proceed to discovery.

Plaintiff asserts that his right to present evidence and fully develop the record through discovery is paramount, particularly when Defendant has failed to conclusively challenge the factual basis of the Complaint. This opportunity for discovery will ensure that Plaintiff is afforded the due process rights guaranteed under the Federal Rules and that justice is served in this matter.

## V. REQUEST FOR SUMMARY JUDGMENT (IF THE COURT SO DETERMINES)

Plaintiff alternatively requests that the Court grant summary judgment in his favor in the interest of judicial efficiency and the expediency of justice. Defendant has failed to substantively contest the factual allegations in the Complaint, and has not provided any meaningful challenge to the core facts of Plaintiff's claims. Their motion focuses primarily on jurisdictional and procedural arguments, rather than disputing the merits of Plaintiff's allegations. As such, Plaintiff respectfully submits that summary judgment is appropriate, as Defendant has not raised any material factual dispute that warrants further discovery.

The Defendant's failure to address the substance of Plaintiff's claims is significant. As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), once a motion for summary judgment is made, the burden shifts to the non-moving party to demonstrate the existence of a genuine issue of material fact. Defendant has failed to meet this burden, as they have not presented evidence or arguments sufficient to dispute Plaintiff's allegations of trade secret misappropriation, retaliation, defamation, or hostile work environment.

Further, as noted in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), summary judgment is appropriate when the evidence shows that no reasonable jury could find in favor of the non-moving party. Here, given that Defendant has not disputed the key factual assertions in Plaintiff's Complaint, there is no reasonable basis to deny summary judgment. The facts presented are sufficient to demonstrate that Defendant has engaged in the conduct alleged, and Plaintiff's claims stand unchallenged.

Should the Court decide to allow discovery, Plaintiff is confident that the factual record will only further support the claims at hand. However, given Defendant's lack of response to the factual allegations and the need for swift resolution, Plaintiff respectfully requests that the Court issue summary judgment in his favor.

This will ensure that justice is served in a timely manner and allow the case to move forward without unnecessary delays caused by Defendant's procedural defenses.

## VI. CONCLUSION

For the reasons outlined above, Plaintiff respectfully requests that the Court:

1. **Deny Defendant's Motion to Dismiss in its entirety**: Defendant has failed to substantively challenge the factual allegations set forth in Plaintiff's Complaint. The Defendant has not raised any material factual dispute that would warrant dismissal. Instead, the Defendant has focused solely on procedural arguments related to the breadth of Plaintiff's claims, without addressing the underlying factual substance of the allegations. Therefore, dismissal is inappropriate at this stage.

2. **Allow the case to proceed to discovery**: Discovery is essential for Plaintiff to substantiate his claims and develop a full factual record. As demonstrated by the evidence in the Defense's motion to dismiss and accompanying exhibits, the Plaintiff has provided sufficient factual allegations that merit investigation through discovery. This will enable Plaintiff to further support his claims and provide more detailed evidence regarding the Defendant's misappropriation of his trade secrets. Discovery is the proper avenue to develop these facts and allow the case to proceed in a fair and just manner.

3. **Alternatively, Grant Summary Judgment in Plaintiff's favor**: In light of the Defendant's failure to challenge the material facts underlying Plaintiff's claims, Plaintiff submits that summary judgment is appropriate at this stage. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

4. **Allow Plaintiff to amend the Complaint, if the Court deems it insufficient**: In the alternative, if the Court finds that Plaintiff's Complaint is insufficient in any way, Plaintiff respectfully requests permission to amend the Complaint. Plaintiff is prepared to provide any additional detail or clarification as necessary to ensure that the claims are fully addressed and that all relevant facts are included. The goal is to ensure the case is heard on its merits, and any technical deficiencies in the Complaint should not prevent the Plaintiff from seeking redress for the harm caused by Defendant's actions.

Plaintiff seeks a fair and timely resolution of this matter, and the Court's intervention is crucial to ensuring that justice is served without unnecessary delay or procedural obstacles.

**Respectfully submitted,**
William J. Ferris III
Plaintiff, Pro Se
SMS: 901-871-8044

11-1-24